(91 App. Div. 593.)

STEIN v. LYON.

(Supreme Court, Appellate Division, Second Department. March 15, 1904.)

1. DEEDS—BUILDING RESTRICTIONS—CONSTRUCTION.

Plaintiff and defendant owned certain lots on Rockaway Beach, adjoining the sea on the south, both holding under deeds from a common source of title containing a covenant running with the land, prohibiting the erection of any building other than a dwelling house on the portion

of the premises lying south of a strip then occupied by the tracks of a railroad. The railroad right of way was thereafter abandoned, and new tracks were subsequently laid a considerable distance north of the old line, and between that line and the new line a boulevard was constructed. Plaintiff and defendant thereafter constructed their buildings fronting on the boulevard, running back toward the beach, and crossing the line of the original railroad. Defendant's building consisted of an automobile station, but the part thereof which extended south of the old railroad line was used as a kitchen, bathroom, and stairway leading to the dwelling apartments above. *Held*, that the restriction only applied to the premises south of the south line of the old railroad right of way, and hence defendant's building was not a violation of the covenant.

2. SAME—NUISANCE.

The construction and maintenance of an automobile station or garage for the entertainment of chauffeurs and their friends on the boulevard at Rockaway Beach, in a neighborhood occupied by expensive summer residences, does not constitute a common-law nuisance.

Appeal from Special Term.

Action by Virginia Stein against Whitney Lyon. From a judgment dismissing the complaint, plaintiff appeals. Affirmed.

Argued before HIRSCHBERG, P. J., and BARTLETT, JENKS, WOODWARD, and HOOKER, JJ.

A. Delos Kneeland, for appellant.
Charles S. Noyes, for respondent.

WOODWARD, J. The plaintiff brings this action to restrain the defendant from violating certain building restrictions which are alleged to burden with reciprocal easements the properties of plaintiff and defendant at Arverne-by-the-Sea, located at Rockaway Beach, in the county of Queens. The premises involved in the controversy are situated along the seashore, and some years ago were divided into two primary divisions, known as the Western and Eastern divisions, and these in turn were subdivided into lots. Lot No. 1 of the Eastern division is owned by the defendant, and the plaintiff owns lots adjacent, where she has erected an expensive summer residence. The deed under which the defendant holds his premises, and both the plaintiff and defendant derive title from the same source, provides "that neither the said party of the second part nor his heirs or assigns shall at any time hereafter erect, maintain or permit any mechanical or mercantile business or any stable or any building other than a dwelling house on the portion of the said premises lying south of this strip thereof now occupied by the tracks of the South Side Railroad of Long Island," etc. At the time of making this original deed, in 1885, in a voluntary partition, the covenant to run with the land, there was a single line of railroad running parallel with the ocean beach, and at a short distance therefrom, and the evident purpose of this covenant was to prevent the construction of business places between this railroad and the beach. Subsequently this line of railroad was abandoned, or transferred a considerable distance to the north of the old line, and between the original line and the new line a boulevard was constructed. The defendant's premises front upon this boulevard, running back toward the beach and crossing the line of the original railroad, and the plaintiff, whose premises are likewise located upon the boulevard, seeks

by this action to prevent the defendant maintaining an automobile station or garage, the building fronting upon the boulevard, and the larger part of the same being concededly outside of the restrictive covenant. The important question in the case is what is meant by the provision that buildings other than dwelling houses should not be constructed "on the portion of the said premises lying south of this strip thereof now occupied by the tracks of the South Side Railroad of Long Island." It appears from the evidence that the Rockaway Railroad Company, the predecessor of the South Side Railroad Company, did not acquire title through the premises now owned by the defendant by condemnation proceedings, but on both sides of the same it did acquire a right of way by condemnation proceedings, and in both instances this right of way was 99 feet in width, and, if this width constituted the "strip thereof now occupied by the tracks of the South Side Railroad of Long Island," no part of the defendant's building would be south of the strip, and it seems to us that the language of the covenant, as well as its spirit, is satisfied by this construction. A railroad occupies more than the space of its tracks. It occupies not only the ground actually used for the tracks and its supports, but the land ordinarily necessary in making repairs, storing materials, building toolhouses, flag stations, etc.; and when this covenant spoke of the "portion of the said premises lying south of this strip thereof now occupied by the tracks of the South Side Railroad" it can hardly be doubted that the parties had in mind so much of such strip as might be lawfully used by such railroad. In other words, the owner of the fee would not be permitted to build, in the absence of this covenant, within 49½ feet of the center line of this railroad on the south. An attempt to do so would undoubtedly have been regarded as limiting the railroad in its occupation of the strip, and would have resulted in condemnation proceedings or other means of keeping the space clear, and the covenant could not have been understood as meaning anything more than that the owner of the premises should not go south of this strip necessary for the operation of the railroad and construct a building for business purposes. The learned court at Special Term has, however, taken a more restricted view of the language, and has construed it to mean the land in the physical occupation of the tracks of the old railroad, and has held this to involve about 21 feet of the rear of plaintiff's premises, making allowances for the width of the supporting grading materials. Taking this most favorable view of the language for the plaintiff, the learned court has found as a matter of fact, and this finding has support in the evidence, that "no portion of defendant's building is within the restricted area except the extension on the southerly side thereof," and as to this he finds that the use to which this extension is devoted, that of a kitchen, bathroom, and stairway leading to the dwelling apartments above, is not in violation of the restrictive covenant. The learned court concludes, and in this we fully agree, that the defendant is entitled to judgment dismissing the complaint, but without costs.

It was urged by the plaintiff, in addition to the above proposition that the maintenance of an automobile station along this boulevard, outside of the restricted portion of the premises, was a common-law nui-

sance; but the learned court has found to the contrary, and we have no doubt of the correctness of this conclusion. The business of the defendant appears perfectly lawful and legitimate; he is not violating the covenant restricting the use of the premises; and the plaintiff, having had the most favorable construction of the language in support of her contention, is not entitled to the reversal of. this judgment, which might be supported upon yet other grounds.

The judgment appealed from should be affirmed, with costs. All concur.