LEMMON v. WINELAND.

1. COVENANTS—BUILDING RESTRICTIONS—PIECES OF LOTS—EQUITY.
   Where it is not practicable to devote pieces of lots, left after condemnation proceedings, to residence purposes under restrictions, it would not be equitable to hold that they may not be used for other purposes.

On sufficiency of showing of probable cause for search for intoxicating liquors, see annotation in 3 A. L. R. 1517; 13 A. L. R. 1318; 27 A. L. R. 742.

2. SAME—IMPRACTICABLE RESTRICTIONS—STATE HOUSING LAW.

 In determining whether it would be practicable to devote pieces of lots, left after condemnation proceedings, to residence purposes under restrictions, regard must be had for restrictions imposed by State housing law (1 Comp. Laws 1929, § 2499).

3. SAME—STREET LINE—WIDENED STREET.

Where lots were deeded after street was widened, restriction against building within certain distance of street line is construed as having reference to line as changed by widening.

4. SAME—WAIVER—ABANDONMENT.

If part of restrictions have been waived or abandoned, court may enforce such of remainder as are still beneficial, but court may not make restrictions.

Appeal from Wayne; Simpson (John), J., presiding. Submitted April 22, 1931. (Docket No. 115, Calendar No. 35,637.)    Decided June 25, 1931.

Bill by Irene Lemmon and others against Laura L. Wineland and others to enjoin violation of building restrictions. Lessey L. Broderick intervened as cross-plaintiff. Decree for plaintiffs and cross-plaintiff. Defendants appeal. Reversed.

*N. Calvin Bigelow,* for plaintiffs.

*Martin, Hunt & Field,* for defendants.

*Dennis Boyle,* for intervener.

CLARK, J.    Wark-Gilbert Company's Security subdivision consists of 161 lots, comprising nearly three and one-half blocks north and south, and lies immediately south of Davison avenue, Detroit. The lots fronting on Davison were 35 feet wide and 102 feet long. Defendants Wineland and Wright were severally contract purchasers of lots 8, 9, 10, and 11 on the southwest corner of Davison and Wildemere avenues.

The city took by condemnation a part of these and other lots along Davison and widened the street from 66 feet to 120 feet. After the widening such lots were but 54.64 feet long. Later the contract purchasers accepted deeds of lots 8, 9, 10, and 11 containing restrictions common to the lots of the subdivision, quoting:

"Restrictions: It is a condition of this agreement that the party of the second part, his heirs and assigns, shall use the lot hereinbefore described, solely for residence purposes;

"2. No single dwelling shall be erected on any of said lots, the cost of construction of which shall be less than $3,500; nor any duplex or two-family flat, the cost of construction of which is less than $5,500; nor any four-family flat or apartment house, the cost of construction of which is less than $8,000.

"3. Building Lines: No building shall be located nearer than 30 feet to the front line of said lot. Any building erected on any lot fronting on the north side of the street shall be located not nearer than two feet to the west line thereof, nor nearer than four feet to the east line thereof. Any building erected on any lot fronting on the south side of the street shall be located not nearer than four feet to the west line thereof, nor nearer than two feet to the east line thereof.

"4. The grade line of all buildings shall be 12 inches above the street sidewalk level.

"5. All flats or apartment houses of four or more apartments shall be erected on a 'site' of not less than 52½ feet in width.

"For the purpose of construing the foregoing restriction, the word 'site' therein contained shall be regarded as synonymous with the word 'lot.' "

The purchasers sold said lots to defendant White Star Refining Company, a corporation, and it began erecting thereon a gasoline filling station, and was

restrained at the suit of plaintiffs who own lots of the subdivision and in the immediate vicinity and on which they have homes. The subdivision, except along Davison, has been improved as a residence district, and but few and unimportant violations of the restrictions have been permitted.

Davison has become in large part a business street. It has street car tracks and heavy vehicular traffic.

The plaintiffs proved the restrictions, and that they had been well observed throughout the subdivision. Defendants contend that it is neither practicable nor possible to devote the pieces of lots which they own to residence purposes under the restrictions, and that, therefore, it would be inequitable to enforce them or require of them performance of the restrictions. Plaintiffs had decree, permanent injunction. Defendants have appealed.

That the original contract purchasers received as compensation in the condemnation proceeding a sum approximating the purchase price of the lots is not of controlling importance. The remaining pieces of lots were not taken; they are private property. If it is not practicable to devote them under the restrictions to residence purposes, it is not equitable to hold that they may be used for no other purpose. *Klug* v. *Kreisch,* 246 Mich. 14; 18 C. J. p. 399; *Columbia College* v. *Thacher,* 87 N. Y. 311 (41 Am. Rep. 365).

That it is not practicable, under the restrictions, to use the lots in question for residence purposes is established by the preponderance of the testimony, and this appears reasonable when the measurements required by the restrictions are laid out on any of these lots. And, too, regard must be had for restrictions imposed by the housing law of Michigan, 1 Comp. Laws 1929, § 2499.

It is urged that the 30-foot building line should be held to be 30 feet from the front line of the lot before the widening, with citation of *Tobey* v. *Moore,* 130 Mass. 448, where it was held:

"The restriction against building 'within eight feet of said streets' named in the deed has reference to the line of each street as existing at the date of the deed, and is intended to establish a uniform rule as of that date, which cannot be affected by the subsequent widening or narrowing of either street by public authority."

But, as has been stated, defendants' deeds in the case at bar were made after the widening.

More appropriate language is taken from *McDonald* v. *Spang,* 55 Misc. Rep. 332 (105 N. Y. Supp. 617):

"It was the manifest purpose and intent of these covenants to preserve and keep open a clear space between the house and the street of 25 feet, for the purpose of light, air, and general attractiveness. The important consideration was this clear and open space between the street and the dwelling, and not that the house should be a given distance from a given line. In other words, the restriction must be construed to refer to the changed line as subsequently established, so as to carry out the manifest purpose of the grantors and to secure to their grantees the benefits intended to be conferred.

"This view as to the construction to be given to the clause is borne out by the fact that at the time the cement company's deed was given the tract had not been subdivided, and had no reference to any fixed line, but was intended to secure 25 feet clear between the dwelling and the street, wherever the street line might be established. The defendant, by accepting his deed from his immediate grantor, seems to have acquiesced in and assented to this con-

struction; for in this deed he covenanted 'that any and all dwellings erected thereon * * * shall be erected not nearer than twenty-five (25) feet to the front line of the lot.' The defendant's deed was given to him in April, 1907, long after the widening of -Parkside avenue; and if it had been intended that these restrictions should refer to the old and original line of Parkside avenue, instead of to the present line, the deed of conveyance to the defendant should have so read.''

It is not contended there has been waiver or abandonment of restrictions. If there had been waiver or abandonment of part of the restrictions the court might enforce such of the remainder as are still beneficial, but the court may not make restrictions.

Enforcement of the restrictions against defendants, under the facts established by the record, would be oppressive and inequitable, and is therefore declined.

Reversed. Bill dismissed. Costs to appellants.

BUTZEL, C. J., and WIEST, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.